OPINION
{¶ 1} Appellant, Arii A. Payne, appeals from the April 22, 2008 judgment entry of the Ashtabula County Court of Common Pleas, in which he was sentenced for felonious assault.
 {¶ 2} On January 25, 2008, appellant was indicted by the Ashtabula County Grand Jury on two counts: count one, vehicular assault, a felony of the third degree, in violation of R.C. 2903.08; and count two, felonious assault, a felony of the second degree, in violation *Page 2 
of R.C. 2903.11. Appellant entered a not guilty plea at his arraignment on February 4, 2008.
 {¶ 3} On March 7, 2008, appellee, the state of Ohio, filed a motion to amend the indictment.
 {¶ 4} A jury trial commenced on March 11, 2008. During trial, the court granted the state's motion to amend the indictment and dismissed count one.
 {¶ 5} At the jury trial, the evidence revealed that on August 19, 2007, Anthony J. Nejbauer ("the victim") went to a steak fry with his wife, Mindy Nejbauer ("Mindy"), and a friend, David Hall ("Hall"). The three then left the steak fry, now accompanied by Hall's wife, and the four went to Degee's, a bar located in Ashtabula. The victim testified for the state that he left the bar to accompany a drunk friend home. He admitted to drinking alcohol and later using cocaine in the car after dropping his friend off. The victim then returned to Degee's.
 {¶ 6} The group later left Degee's and went to L.A. Caf É, another bar located in Ashtabula. The victim indicated that he consumed more alcohol at L.A. Caf É . Because the bar began to get too crowded, the group decided to leave. As they were exiting, Mindy accidentally bumped into a man, who started to argue with the victim. According to the victim, he offered to buy the man a drink but the man continued to argue. The victim then walked his wife to the car and she left. The victim then returned to the bar. He attempted to talk to people to calm down the situation, which had escalated, in order to avoid a fight. The victim then left the bar again. As he was leaving, he observed Hall in a physical altercation with the man. *Page 3 
 {¶ 7} Hall testified for the state that as the group was leaving L.A. Caf É, the man began arguing with the victim about being bumped. Hall stated that he began arguing with the man after the victim's attempt to buy the man a drink had failed. A fight ensued between Hall and the man outside of L.A. Caf É . Several others joined in and jumped on Hall, who eventually got away. After the fight broke up, Hall observed a white car, which he described as a G.M. make with nice chrome rims, pull up. He saw several people get into the car.
 {¶ 8} Hall then heard the screech of tires stopping and saw the victim on the hood of the car. He observed the vehicle gas really hard and saw the victim holding onto the front bumper. The car veered left and Hall witnessed the victim come out from the back of it.
 {¶ 9} Russell Vance Ice, Jr. ("Ice") testified for the state that as he was leaving L.A. Caf É, he observed Hall and another man fighting. According to Ice, a group of men jumped in to pull Hall off of the man. Ice later saw the man get into a car. He described the vehicle as a white, four-door Chevy with really nice silver or chrome wheels. Ice observed four people get into the car. In particular, he noted that appellant, who he knew from around the neighborhood, got into the driver's seat. Ice stated that appellant drove directly and hit the victim with his automobile. He testified that appellant stopped the car, then pushed the gas and kept going. Ice indicated that the victim got sucked up underneath the front of the vehicle. He said that the front wheels came up over the victim and he spun underneath them three or four times. Ice stated that after the back wheels came up over the victim, appellant drove away. *Page 4 
 {¶ 10} William Parkomaki ("Sergeant Parkomaki"), with the Ashtabula City Police Department ("ACPD"), testified for the state that he was dispatched to the scene, and upon his arrival, observed a large group of people outside L.A. Caf É and the victim lying in the road. After receiving a description of the vehicle involved in the incident (i.e. a white Chevy with twenty inch wheels, low profile tires, and a Pennsylvania temporary tag), it was eventually located ten blocks away in a store parking lot. Upon checking the automobile, Sergeant Parkomaki indicated that it was locked, no license plates were on the car, a vehicle registration appeared to be on the rear passenger floor, and the glove box was open and empty. He located an envelope on the ground next to the car which contained a certificate of title issued by the state of Ohio to appellant. Sergeant Parkomaki observed damage to the outside of the vehicle, specifically on the front driver's side and on the rear of the car.
 {¶ 11} John Henry Koski ("Captain Koski"), with the ACPD, testified for the state that he too was dispatched to the scene and saw the victim lying in the middle of the street. Captain Koski came into contact with Monique Robinson ("Robinson"), who was next to the victim and very excited.
 {¶ 12} Robinson testified for the state that she was at L.A. Caf É on the night at issue. She left the bar due to the fight that broke out. Robinson observed appellant hit the victim with his white car with chrome rims, then kept going.
 {¶ 13} According to Captain Koski, he left the scene and went to an address he knew to be appellant's. However, appellant was not at the residence. Captain Koski then went to the parking lot where the suspect vehicle was located. He had previously observed the car being driven in the city by appellant. The vehicle was ultimately towed and placed in a *Page 5 
secure storage area. Captain Koski then went to the emergency room and was given a statement by Hall. Captain Koski also spoke with the victim, Mindy, and Robinson.
 {¶ 14} Dr. Charles Yowler ("Dr. Yowler"), a trauma surgeon at Metro Health Medical Center in Cleveland, Ohio, testified for the state that he treated the victim after the incident. According to Dr. Yowler, the victim sustained the following injuries: a fracture of the bone in his upper arm near the shoulder; a fracture of his left second rib, a fracture of his left third rib, a fracture of his left fourth rib, a fracture of his left fifth rib, a pulmonary contusion, a fracture of his right fourth rib, and a cracked pelvis in three different areas. Dr. Yowler stated that medical records indicated that the victim had been intentionally struck by a car and then backed over a second time. He said that the victim's injuries were consistent with having been struck by a car.
 {¶ 15} Lauren Maley ("Maley"), the mother of appellant's child, testified for the state that in the early morning hours of August 19, 2007, appellant came to her home, advising her that something had happened and that he needed to use her car. She was worried because appellant seemed mad or upset.
 {¶ 16} Alan Altonen ("Sergeant Altonen"), with the ACPD, testified for the state that he served a search warrant on the vehicle on August 29, 2007. Four pieces of debris or fibers were located on the underside of the automobile. Sergeant Altonen indicated that the bottom of the car appeared as if dirt had been wiped away by running over an object. Fabric type impressions were also found underneath the vehicle. An interior search revealed a title and a social security card above the driver's side visor. Appellant was listed as the purchaser on the title and his name was on the social security card. Sergeant Altonen noted damage to the exterior of the vehicle. *Page 6 
 {¶ 17} Joseph Cellitti ("Detective Cellitti"), with the ACPD, testified for the state that he was also involved with the search of the vehicle. Detective Cellitti stated that he observed swipe marks underneath the car, like clothing had wiped over the area and removed debris from the underside of the automobile, which was indicative of the car having run over something.
 {¶ 18} Dan Clint ("Clint") testified for appellant that he had eaten at a deli located in the vicinity of L.A. Caf É and when he exited the restaurant, he noticed a crowd of people and an altercation occurring in the street. Clint saw a car pull out and heard a thud as if someone had been hit by a car. He stated that the car was dark in color and that it was not normal factory height. Clint observed the car stop, then run over the victim a second time. On cross-examination, Clint said that he thought the actions of the driver were deliberate.
 {¶ 19} William Balliet ("Balliet") testified for appellant that he was at L.A. Caf É during the incident. He indicated that other people got involved in the altercation, but that he was not able to identify appellant as one of them. After the fight concluded, Balliett observed a white car with shiny wheels strike the victim. He stated that the victim's body rolled underneath the vehicle.
 {¶ 20} Jamarce Miller ("Miller") testified for appellant that he was in the vicinity of L.A. Caf É and observed a fight. Miller said that appellant was not involved in the altercation but he saw him standing in the street. Miller asked appellant where he could buy some "weed." According to Miller, he and appellant drove away to purchase marijuana. Miller stated that he saw appellant's white car in front of L.A. Caf É, but that appellant was not driving it.
 {¶ 21} Mindy testified for appellant that she witnessed a fight break out after her husband walked her to her car. She called 9-1-1 to alert the authorities. As she was driving *Page 7 
away, Mindy indicated that a white car pulled past her and she heard people say that someone had been hit.
 {¶ 22} Following the trial, the jury found appellant guilty of felonious assault.
 {¶ 23} On March 18, 2008, the trial court ordered that a presentence report be prepared prior to sentencing.
 {¶ 24} Pursuant to its April 22, 2008 judgment entry, the trial court sentenced appellant to seven years in prison. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 25} "[1.] Appellant was deprived of effective assistance of counsel at trial.
 {¶ 26} "[2.] The conviction is against the manifest weight of the evidence and is not supported by the sufficiency of the evidence."
 {¶ 27} In his first assignment of error, appellant argues that his trial counsel was ineffective. He stresses that his trial counsel failed to move for acquittal at the close of the state's case and that he presented damaging testimony.
 {¶ 28} Strickland v. Washington (1984), 466 U.S. 668, 687, states:
 {¶ 29} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction *Page 8 
* * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 30} "* * * When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland, supra, at 694, states: "to warrant reversal, `(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"
 {¶ 31} In order to prevail on a claim of ineffective assistance of counsel, the defendant has the burden to establish two things: (1) that counsel's performance was deficient, and (2) that counsel's deficiency prejudiced the defense. State v. Reynolds (1998), 80 Ohio St.3d 670,674, citing Strickland, supra, at 687. The defendant must produce evidence that counsel acted unreasonably by substantially violating essential duties owed to the client. State v. Sallie (1998),81 Ohio St.3d 673, 674.
 {¶ 32} A criminal defense attorney owes a duty of care to his client. A "duty" is defined as "[a] legal obligation that is owed or due to another and that needs to be satisfied; an obligation for which somebody else has a corresponding right." Black's Law Dictionary (8 Ed. 2004) 543.
 {¶ 33} Under Strickland as interpreted by Ohio courts, attorneys are presumed competent, reviewing courts must refrain from second-guessing strategic, tactical decisions and strongly assume that counsel's performance falls within a wide range of *Page 9 
reasonable legal assistance. State v. Carter (1995), 72 Ohio St.3d 545,558. See, also, State v. Burley (Aug. 11, 1998), 7th Dist. No. 93-CA-204, 1998 Ohio App. LEXIS 3895, at 9 ("a defendant is not guaranteed the right to the best or most brilliant counsel").
 {¶ 34} Upon demonstrating counsel's deficient performance, the defendant then has the burden to establish prejudice to the defense as a result of counsel's deficiency. Reynolds, supra, at 674. The reviewing court looks at the totality of the evidence and decides if there exists a reasonable probability that, were it not for serious errors made, the outcome of the trial would have been different. Strickland, supra, at 695-696. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
 {¶ 35} "Criminal defense is an art, not a science. Criminal defense attorneys adopt different approaches to their craft, based partly upon the demands of the particular case, and partly upon their own personal characteristics. Ordinarily, defense counsel's particular style of defense is not a basis for a claim of ineffective assistance of counsel." State v. Benton (Jan. 20, 1993), 2d Dist. No. 91 CA 71, 1993 Ohio App. LEXIS 172, at 7. "A lawyer shall act with reasonable diligence and promptness in representing a client." Ohio Prof. Cond. Rule 1.3. (Emphasis sic.)
 {¶ 36} In the instant matter, we disagree with appellant that his counsel was ineffective for failing to move for an acquittal at the close of the state's case. Because the state's case in chief linked appellant to the crime of which he was accused, the failure of his counsel to make a Crim. R. 29 motion does not constitute ineffective assistance of counsel. See State v. Beesler, 11th Dist. No. 2002-A-0001, 2003-Ohio-2815, at ¶ 17. *Page 10 
 {¶ 37} In addition, we disagree with appellant that his counsel was deficient for calling Clint, Balliet, and Mindy as witnesses. "** * [T]he decision to call, or not to call, a certain witness to the stand is subject to the strong presumption that the decision might be considered sound trial strategy." State v. Rudge (Dec. 20, 1996), 11th Dist. No. 95-P-0055, 1996 Ohio App. LEXIS 5807, at 36.
 {¶ 38} With respect to Clint, his testimony revealed the car that struck the victim was dark in color, rather than white, which could have been beneficial for appellant. Balliet's testimony was introduced to show that he had possession of potential evidence that the police department was unwilling to collect, which also may have proven beneficial for appellant's case. Although both Clint and Balliet testified that the driver of the vehicle struck the victim intentionally, so too did the testimony of Hall, Ice, and Robinson which was offered by the state. Also, appellant's counsel called Mindy because she was unable to identify the driver of the vehicle that hit her husband.
 {¶ 39} Pursuant to Strickland, supra, appellant fails to show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. Even assuming arguendo that appellant's counsel's performance was deficient, appellant cannot show that the deficient performance prejudiced the defense. Thus, he cannot show that but for his counsel's unprofessional errors, the result of the proceeding would have been different.
 {¶ 40} Appellant's first assignment of error is without merit.
 {¶ 41} In his second assignment of error, appellant contends that his conviction is against the manifest weight of the evidence and is not supported by the sufficiency of the evidence. *Page 11 
 {¶ 42} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-14:
 {¶ 43} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 44} "`"(* * *) The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiryabout due process. It raises a question of law, the resolution of whichdoes not allow the court to weigh the evidence. * * *"'
 {¶ 45} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'" (Emphasis sic.) (Citations omitted.)
 {¶ 46} "* * * [A] reviewing court must look to the evidence presented to the jury to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v.March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at 8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991),61 Ohio St.3d 259, *Page 12 
paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 47} In Schlee, supra, at 14-15, we also stated that:
 {¶ 48} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 49} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record,weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."' (Citations omitted.)." (Emphasis sic.)
 {¶ 50} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "`only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v.Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin
(1953), 20 Ohio App.3d 172, 175.
 {¶ 51} With regard to the manifest weight of the evidence, we note that the jury is in the best position to assess the credibility of witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 52} In the case sub judice, with respect to the sufficiency of the evidence, there is substantial evidence upon which the jury could reasonably conclude beyond a reasonable doubt that appellant was guilty of felonious assault. *Page 13 
 {¶ 53} R.C. 2903.11(A)(2) provides in part: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 54} The evidence at trial revealed that a fight ensued outside of a bar. Several witnesses testified that appellant was the driver of the vehicle which later struck the victim, causing severe injuries. Specifically, Ice indicated that appellant drove directly and hit the victim with his automobile. He stated that after hitting the victim, appellant stopped his car, then pushed the gas and kept going. Robinson observed appellant hit the victim with his car and keep going. She said that the victim fell onto appellant's vehicle, the victim dropped to the ground, and appellant ran him over. A search of the vehicle revealed that the automobile involved in the incident belonged to appellant. Also, Maley testified that appellant came to her home on the evening in question in an agitated state and advised her that he needed to use her car because something had happened.
 {¶ 55} Based on Schlee, supra, there is substantial evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of the offense have been proven.
 {¶ 56} With regard to the manifest weight of the evidence, again, the state presented evidence that the victim was intentionally struck by a car, both titled to and driven by appellant, after a brawl occurred outside of a bar. After hitting the victim and stopping, appellant accelerated and continued to run the victim over. The victim suffered severe injuries and was unable to work for six months. Both the state and *Page 14 
appellant presented numerous witnesses. Pursuant to Schlee andThompkins, supra, the jury did not clearly lose its way in convicting appellant of felonious assault.
 {¶ 57} Here, the jury clearly chose to believe the testimony of the state's witnesses as opposed to appellant's
 {¶ 58} Appellant's second assignment of error is without merit.
 {¶ 59} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed. The court finds there were reasonable grounds for this appeal.
CYNTHIA WESTCOTT RICE, J., TIMOTHY P. CANNON, J., concur. *Page 1